IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| SAMMIE L. YOUNG, JR., ) | |
| ) | |
| Plaintiff, ) | Case No. 20 CV 5544 |
| ) | |
| v. ) | |
| ) | Honorable John Robert Blakey, Judge |
| VILLAGE OF DOLTON, an ) | |
| Illinois Municipal Corporation, and ) | Honorable Jeffery Cole |
| RILEY ROGERS, in his individual capacity ) | Magistrate Judge |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

1. This is a civil action for damages, declaratory and injunctive relief to remedy Defendants' deprivation of Young's rights under the United States Constitution. Young has been deprived of his rights under the First and Fourteenth Amendments by reason of Defendants termination of Young in retaliation for his exercise of free speech and political association, specifically, Young's refusal to use his position as the Director/Manager of the Water Department for the Village of Dolton assist political supporters of Mayor Riley, for speaking and complaining about the misuse of Dolton's power and authority to collect and/o shut-off delinquent water accounts for political reasons, and in retaliation for providing political support to Tiffany Henyard, the person Mayor Rogers had reason to believe would soon launch a political campaign for election to the office of Mayor of the Village of Dolton in 2020. Young brings this action under 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution.

1

**Jurisdiction**

2. The civil rights in this action are brought pursuant to 42 U.S.C. § 1983 for Young's rights under the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over those claims pursuant to 28 U.S.C. § § 1331 and 1343. Declaratory and injunctive relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202, and the Federal Rules of Civil Procedure 57 and 65.

**Venue**

3. Venue is proper in the Northern District of Illinois because all parties reside within the District and all relevant actions occurred within the District.

**Parties**

4. Plaintiff Young is a resident of Chicago, Illinois, and from April 9, 2017 until September 20, 2019, Young served the Director/ Manager of the Water Department for the Village of Dolton, an executive administrative staff position specifically authorized and approved by the Board of Trustees of the Village of Dolton.

5. Defendant Village of Dolton is a municipal corporation under the laws of the State of Illinois.

6. At all material times, defendant Riley Rogers was the Mayor of the Village of Dolton, and as such, he was and is the policymaker responsible for the operation of the Village. At all relevant times, his duties included hiring, transfer, reassignment, demotion, and termination of all appointed Village employees appointed to serve on as an executive administrative staff member of the Village of Dolton, including the position of Director/ Manager of the Water Department of the Village of Dolton.

**Background**

7. Upon information and belief, in 2017, defendant Riley, in his position as the incumbent Mayor of the Village of Dolton, implemented a political plan to take control of the Board of Trustees of the Village of Dolton in 2018 by selecting and financially supporting three candidates to challenge the three incumbent Trustees up for re-election in the February 2018, primary election. Tammie Brown was named as one of the three challengers selected by Mayor Rogers.

8. To assist him in the upcoming 2018 Village of Dolton trustee primary election, defendant Rogers solicited the political assistance of plaintiff, Sammie L. Young, Jr., a well-known and well-respected political operative in the South Suburban area. In support of Mayor Rogers' political plan to unseat the three targeted Village of Dolton incumbent trustees, Young organized and marshalled approximately 50 volunteers to collect needed candidate petition signatures. Young also organized an additional 25-50 volunteers to distribute political literature in support of the three trustee candidates endorsed and financially supported by Mayor Rogers, including Tammie Brown.

9. In exchange for his political support and assistance, Mayor Rogers promised to appoint Young to a full-time executive staff position within the Village of Dolton in 2018, and to pay Young a $50,000.00 annual salary, which Young maintained was consistent with his training and experience. The promised appointment, however, was conditioned on Mayor Rogers' endorsed candidates winning the February 2018 primary election to ensure Mayor Rogers has sufficient votes on the Village of Dolton Board of Trustees to win approval of Young's executive staff appointment following the primary election.

10. Upon information and belief, following the February 2018, primary, Mayor Rogers controlled or substantially influenced the actions of the Village of Dolton through this control and influence of members of the Board of Trustees of the Village of Dolton. He is sued in his individual capacity for his acts under color of law.

11. Upon information and belief, sometime before Young was appointed as the Director/Manager of the Water Department for the Village of Dolton, the Village had been sued by the City of Chicago for the non-payment of past due water bills. The City of Chicago also had petitioned the court to appoint a receiver over the Village of Dolton Water Department to ensure the collection of approximately $9 million in past due bills and penalties.

12. On or about April 9, 2018, Mayor appointed Sammie Young to the position of Director/Manager of the Water Department of the Village of Dolton with the consent of the Board of Trustees of the Village Board. In this position, Young received an annual salary of fifty-thousand dollars ($50,000.00), full health insurance for Young and members of his family, a Village of Dolton vehicle for his personal use, and a cell-phone, paid by the Village of Dolton. As the Director/Manager of the Water Department, Young supervised approximately ten (10) employees assigned to the Water Department.

13. Upon information and belief, the City of Chicago and the Village of Dolton reached a settlement in the civil lawsuit allowing the Village of Dolton to continue to operate its water department without a court-appointed receiver. At the time, Young, with the support of Mayor Rogers and the Village Board, implemented aggressive procedures to collect owed water bill revenues from delinquent residential and commercial water accounts.

14. During the January 2, 2018, Village of Dolton Regular Meeting Board of Trustees, Trustee Henyard opposed a $30,000.00 payment identified on Village of Dolton warrant list because the Village of Dolton "can't even pay our water bills and other bills that don't get5 included on the list."

15. From on or about April 9, 2018, and continuing until September 20, 2019, Young served as the Director/ Manager of the Water Department of the Village of Dolton. In his role as Director/Manager of the Water Department, Young was responsible for the collection, recording, and maintenance of all Village of Dolton water account records and billing information. Young was also responsible for maintaining and monitoring for the timely reporting and shut-off of delinquent water bill accounts throughout the Village of Dolton for all residential and commercial water bill accounts controlled by the Village of Dolton.

15. While performing his responsibilities as the Director/Manager of the Water Department for the Village of Dolton, Young learned that the Village of Dolton had not consistently or effectively collected water bill payments from residential and commercial customers for a number of years. Young was also aware that the City of Chicago has filed a lawsuit against the Village of Dolton seeking to collect over $9 million in past due water bills owed to the City of Chicago by the Village of Dolton.

16. As Young began to implement policies and procedures to collect delinquent water bills owed to the Village of Dolton and to ensure both residential and business customers for the Village of Dolton were made aware of their delinquent water bill accounts, Young actively personally engaged residential and business customers to advise them of the new required consequences of continued non-payment of water bills. Young consistently reported his

continuing efforts to fairly collect and to properly identify and target seriously delinquent water bill accounts for shut-off to the Village Board and Mayor Rogers.

17. On or about January 22, 2019, former Village of Dolton Trustee Valeria Stubbs, raised concerns as Village of Dolton official that Mayor Rogers had improperly permitted a pollical supporter, Calumet City Plumbing, to avoid water shut-off despite having a $20,000.00 delinquent water account.

18. During the February 4, 2019, Village of Dolton Regular Meeting Board of Trustees, Trustee Henyard discussed water restoration residential water service by the Public Works Department immediately after payment of delinquent amount or an agreed payment plan, in position to Mayor Rogers policy of delaying restoration only after a few days.

19. Upon information and belief, during a Village of Dolton Regular Meeting Board of Trustees, before March 18, 2019, Trustee Henyard presented and championed the passage of Village of Dolton Ordinance No, 19-003, "Amending the Section 7-6-2A of the Village of Dolton Code Prohibit Residential Water Shut-offs on Fridays".

20. At the March 18, 2019, Village of Dolton Regular Meeting Board of Trustees, Mayor Rogers vetoed Village of Dolton Ordinance No, 19-003, "Amending the Section 7-6-2A of the Village of Dolton Code Prohibit Residential Water Shut-offs on Fridays".

21. Upon information and belief, on or before April 1, 2019, Mayor Rogers directed the Village of Dolton Water Department to shut-off the water of a residence owed by pollical rival, Duane Muhammad, a former Village of Dolton Trustee.

22. On May 6, 2019, Trustee Tiffany Henyard voted against Village of Dolton Ordinance No. 19-009, which restored the mayor's authority hire/terminate employees, including the Manager/ Director of the Water Department.

23. On June 17, 2019, Trustee Tiffany Henyard made a "General Announcement" during the Village of Dolton Board of Trustees Meeting of the Committee of Whole designed to self-promote her planned candidacy for office of mayor for the Village of Dolton in 2021 Democratic primary election. During this same meeting, Trustee Henyard identified her mayoral campaign issues as addressing crime, the water department and corruption as the most important facing the village.

24. During the June 17, 2019, Village of Dolton Board of Trustees Meeting of the Committee of Whole, Trustee Henyard voted against the proposed Village of Dolton "Rescinding Ordinance No. 19-003 Prohibiting Water Shut-off on Friday" while commenting that "the water department has a ton of issues, and the department needs to be fixed" and presented a water bill from a resident for $388,000,000.

25. On July 15, 2019, Trustee Tiffany Henyard made two "General Announcements" during the Village of Dolton Regular Meeting Board of Trustees designed to self-promote her planned candidacy for office of mayor for the Village of Dolton in 2021 Democratic primary election.

26. On August 5, 2019, Trustee Tiffany Henyard made two "General Announcements" during the Village of Dolton Regular Meeting Board of Trustees designed to self-promote her planned candidacy for office of mayor for the Village of Dolton in 2021 Democratic primary election.

27. In or about August 2019, Young confronted business owner, "SO", about a $6000.00 delinquent water bill that he discovered had been recorded by the water department as being delinquent in excess of three (3) years for the Sandpiper Lounge nightclub located on the corner of 144th Place and Martin Luther King Drive in Dolton. When confronted the business owner ("SO") explained that he been assured by his business partner ("CH") that all related rents, utilities and water bill accounts had been paid on time, and that he was completely unaware of the existing long-term delinquent water bill. "SO" promised to investigate what had occurred and further assured Young that he would personally pay the amount owed to bring the water bill account current to prevent any formal collection action by the Village of Dolton.

28. After a few days, the business owner ("SO") informed Young that his business partner, "CH", told him that Mayor Rogers was aware of the water bill delinquency and had reassured "CH" that the water department would not shut-off the water to the business. According to "SO", Mayor Rogers had also instructed "CH" to simply pay a small amount towards the outstanding delinquent water bill each month and to disregard the larger delinquency amount. "SO" further explained that his business partner, "CH" commented that the outstanding water bill delinquency was not a problem because he had "paid Mayor Rogers what he owed" when he transferred the ownership of his barbeque restaurant, "Woo Woos" to Mayor Rogers, a restaurant that he had previously operated and had previously agreed to sell to "SO". Woos Woo's Barbeque restaurant had been located in the Village of Dolton at the intersection of Sibley East Boulevard and Chicago Road.

29. Notwithstanding the claims made by "SO" about "CH" and Mayor Rogers political relationship, Young advised "SO" that unless the delinquent water account was paid and brought

8

current the water to the business would be shut-off and formal collection would be initiated because the Village Dolton was required to follow strict procedures in an effort to collect all delinquent water accounts.

30. Upon information and belief, "SO" subsequently attempted to pay the full water bill delinquency with two separate payments over a period of two weeks. While the Village of Dolton payment center readily accepted the first partial payment for the delinquent water bill, "SO" was later informed by payment center clerks working in the water bill payment department approximately two-weeks later that he, "SO", no longer had a Village of Dolton water account in his name. "SO" was also told that the Village of Dolton could no longer accept a water payment on the account from him or provide any information to him about the current name assigned to the water account.

31. When Young learned what had occurred, he immediately initiated an investigation as the Director/Manager of the Water Department for the Village of Dolton. As a result of this investigation, Young discovered that the delinquent water bill account had been reassigned to "CH", the co-owner of the Sandpiper Lounge, and that "SO's" name had been removed from the account. The Village of Dolton water department records also reflected that the amount owed on Sandpiper Lounge account also no longer a delinquent account requiring any immediate payment.

32. On or about September 8, 2019, a 31-year-old female Dolton resident was shot outside the Sandpiper Lounge nightclub during the early morning hours. Neighbors living near the nightclub where the deadly shooting took place, had been complaining to the Village of Dolton elected officials and Mayor Rogers specifically for several months. The neighborhood ng residents had repeatedly informed Mayor Rogers and other elected officials that the Sandpiper

Lounge nightclub was a nuisance which regularly attracted large crowds every night, causing the residential area to become packed with cars on the street, often playing loud music into the night.

33. As part of his water department investigation, Young also learned that before "SO" was allowed to pay the full amount of the delinquent water account due to the Village of Dolton, it was newly elected Village Trustee Tammie Brown who had personally instructed the supervisor of the Water Department bill payment center to delete "SO's" name from the water account for the Sandpiper Lounge and record a new water account for the business under the name of "CH". The new business account in the name of "CH" was then provided a "zero" balance or non-delinquent status by the Village.

34. Recognizing this as an improper and unfair attempt to help the politically connected owner of the Sandpiper Lounge nightclub remain open, as well as to prevent the water department from fairly and consistently collecting a seriously delinquent water bill account from this business owner for political reasons, Young immediately notified the Assistant Village Manager of the apparent improper political favoritism provided "CH", the improper manipulation of the delinquent water account collection process for the benefit of "CH", and the potential negative effect this political favoritism would have in trying to get other Dolton residences and businesses to pay their respective delinquent water bills. Young also reminded the Assistant Village Manager that it was his responsibility to treat all Dolton residences and businesses the equally and that the citizens of Dolton would really be upset it this political favoritism regarding water bill payments and selective shut-offs would be become known throughout the community.

35. Upon information and belief, the Assistant Village Manager informed Mayor Rogers and Trustee Brown of Young's investigation and discovery of political favoritism and the

improper manipulation of the delinquent water account of the Sandpiper Lounge nightclub by Trustee Brown on behalf of "CH". Upon information and belief, the Assistant Village Manager also informed Mayor Rogers that Young had informed "SO" that Trustee Brown had directed that his name be removed from the Village of Dolton water account before it had been paid and the remaining amount past due would be processed for formal collection.

36. On information and belief, later during September 2019, "SO" attended a Village of Dolton public Trustee Board meeting to complain about the political favoritism that had been provided "CH" and directly confronted Mayor Rogers to explain how his name could be removed from a Village of Dolton water account without his approval. Mayor Rogers became visibly angry and agitated during the public meeting. After learning that Young had shared what he had discovered when investigating this concern with "SO", Mayor Rogers was overheard during saying, "I will take care of him later" meaning Young.

37. On or about September 20, 2019, Mayor Rogers directed Young to come to the office of Assistant Village Manager, in the Village Hall. When Young arrived, Mayor Rogers reprimanded Young by saying, "we have to sever our ties, you should have never said that" to the Assistant Village Manager or shared any information with "SO". Mayor Rogers then ordered Young to immediately turn-in his keys to the Village of Dolton vehicle he had been assigned, and to also immediately turn-in the cellphone the Village of Dolton had provided to Young as an executive staff member.

38. On September 20, 2019, at approximately 4:10 p.m., Young was summarily terminated from his position as the Director/Manager of the Water Department for the Village of Dolton and ordered to leave and not re-enter the Village of Dolton Village Hall. All health

insurance coverage for Young and his family was also quickly terminated, without providing Young the opportunity to purchase coverage as required by COBRA.

39. At all relevant times prior to his termination on September 20, 2019, Young performed his job functions as the Director/Manager of the Water Department for the Village of Dolton in an acceptable manner and met all of his employer's reasonable expectations.

40. Plaintiff continued to support Trustee Tiffany Henyard throughout her campaign in 2019, 2020 and 2021, by organizing volunteers to obtain signatures for her candidate petitions, o conducting canvassing, handing-out political campaign literature, and by providing financial support.

41. On or about April 13, 2021, Tiffany Henyard, as the mayor-elect for the Village of Dolton held a "Transition Team Meeting" where plaintiff Sammie Young was identified as member of "The Transition Team for the Honorable Tiffany Henyard, mayor-Elect, Village of Dolton.

42. Defendant's stated reasons for Young's termination was false and pretextual. The true reasons Defendants terminated Young's employment included the following:

a. to retaliate against him for exercising his First Amendment right to not support Mayor Roger's efforts to improperly use the authority of the Village of Dolton Water Department to forego the collection of delinquent water bills or to shut-off seriously delinquent water bill accounts when the business or individual identified were considered political supporters;

b. to protect the continued concealment of the direct political influence of "CH", with Trustee Brown and Mayor Rogers, as the true owner of the public nuisance, Sandpiper Lounge nightclub;

12

c. to conceal from Dolton residents and other business owners, Mayor Roger's direct involvement in controlling and directing the water department to forego the water shut-off for identified political supporters, and the Mayor's direct involvement in improperly allowing a long-standing delinquent business water account concerning the Sandpiper Lounge nightclub to remain unpaid in order to assist a political supporter and Trustee Tammie Brown;

d. to potentially prevent the public from knowing or learning that Mayor Rogers and "CH" may have had a secret business relationship relating to "CH" transferring the ownership of "Woo Woos Barbeque" restaurant to Mayor Rogers, as an improper and illegal *quid pro quo*, for the Village of Dolton issuing a liquor license for the Sandpiper Lounge nightclub, notwithstanding that the Sandpiper Lounge nightclub was ineligible for State of Illinois liquor license because of "CH's" background and known partial ownership status;

e. to conceal from the public and protect Mayor Rogers' business interest in "Wilma's Barbeque" Restaurant which, upon information and belief, is actually owned and controlled, at least partially for the benefit and financial gain of Mayor Rogers. "Wilma's Barbeque" is believed to have opened and began operating in Dolton at the location previously owned by "CH" while operating "Woos Woo's Barbeque", at or near the time the Sandpiper Lounge nightclub was approved and granted its first liquor license by the Village of Dolton at the direction and approval of Mayor Rogers;

f. to prevent the Village of Dolton water department from forcibly collecting the remainder of the $6,000.00 delinquent water account owed by the Sandpiper Lounge and "CH".

g. to punish Sammie Young for providing political support to Trustee Tiffany Henyard who had identified the on-going problems, policies, and operation of the water department as

13

one of the most important issues facing the Village of Dolton in announcing her political campaign for the office of Mayor for the Village of Dolton.

## COUNT I- FIRST AMENDMENT – SPEECH

43. Young realleges and incorporates by reference Paragraphs 1-42.

43. Investigation, discussion, and transparent information concerning the public nuisance Sandpiper Lounge nightclub and the non-collection of seriously delinquent water bills in the Village of Dolton in September 2019, were of matters of public concern and related to important and significant matters of political, social, and economic concern of citizens and business owners in the Dolton community.

44. Political affiliation, political allegiance and protecting political financial support is not an appropriate prerequisite for effective performance of the position for which Young was terminated because Young's position did not allow him meaningful input into making or implementing policy decisions, and he had no discretionary policy making powers.

45. Young was deprived of a federal right, privilege, or immunity by Defendants. Specifically, Young was terminated from his job because of his open and public denunciation of the Mayor Rogers' and Trustee Tammie Brown's suspected misuse and abuse of the water collection authority of the Village of Dolton Water Department, and the use of their political power to provide favoritism to the financially connected and political supporters of Mayor Rogers and/or Trustee Brown.

46. Young was also deprived of a federal right, privilege or immunity to publicize and openly complain to his superiors about suspected misuse of the water department water bill collection powers, as well as placing the Village of Dolton in jeopardy of violating the settlement

14

agreement entered into with the City of Chicago regarding Dolton's good faith efforts to pay the more $9 million delinquent water bill owned to the City of Chicago, as well as the misuse of subordinate Village of Dolton employees for political gain by Mayor Rogers.

47. Prior to his termination, Young discharged his duties and responsibilities for the Village of Dolton in a professional and able manner, but Defendants unlawfully penalized him for exercising his rights under the First and Fourteen Amendments of the United States Constitution.

48. Defendants' deprivations of Young's First Amendment rights caused Young to suffer substantial losses of salary, benefits, and job security, as well as mental and emotional pain and suffering.

49. Defendants' actions have deprived Young of rights guaranteed him by the First and Fourteenth Amendment of the United States Constitution.

50. Defendants' termination of Young was undertaken under the color of state law in that Defendant undertook and implemented Young's termination in their role as governmental actors.

WHEREFORE, Plaintiff Sammie L. Young, Jr., demands judgment be entered against the Village of Dolton, and Riley Rogers, individually and to award plaintiff money damages, declaratory and injunctive relief, reasonable attorney fees, costs and such other relief as the Court may deem just and proper.

## COUNT II- FIRST AMENDMENT – ASSOCIATION

51. Young realleges and incorporates by reference Paragraphs 1-50.

52. Young was deprived of a federal right, privilege, or immunity by Defendants. Specifically, Young was terminated from his job because of his support for Trustee Tiffany Henyard by informing Sam Otis, a Village of Dolton business owner that Mayor Rogers had illegally and improperly cause his name to be removed from delinquent water account and charged to Charles Higgins because Charles Higgins was one of Mayor Rogers' political supporters, and thereby directly and indirectly supporting Trustee Tiffany Henyard's mayoral campaign in the eyes of the community.

53. Young discharged his duties for the Village in a professional and able manner, but Defendants unlawfully penalized him for exercising his rights under the First Amendment of the United States Constitution.

54. Political affiliation, political allegiance and providing support for a campaign issue raised by pollical opponent is not an appropriate prerequisite for effective performance of the position for which Young was terminated because Young's position did not allow him meaningful input into making or implementing policy decisions, and he had no discretionary policy making powers.

55. Defendants' deprivations of Young's First Amendment rights caused Young to suffer substantial losses of salary, benefits, and job security, as well as mental and emotional pain and suffering.

56. Defendants' actions have deprived Young of rights guaranteed him by the First and Fourteenth Amendment of the United States Constitution.

57. Defendants' termination of Young was undertaken under the color of state law in that Defendant undertook and implemented Young's termination in their role as governmental actors.

16

WHEREFORE, Plaintiff Sammie L. Young, Jr., demands judgment be entered against the Village of Dolton, and Riley Rogers, individually and to award plaintiff money damages, declaratory and injunctive relief, reasonable attorney fees, costs and such other relief as the Court may deem just and proper.

Dated: November 1, 2021

                                                                  SAMMIE L. YOUNG, JR.

By: */s/ Gregory T. Mitchell*
     Gregory T. Mitchell
     Law Office of Gregory T. Mitchell, P.C.
     18141 Dixie Highway, Suite 115
     Homewood, Illinois 60430
     (708) 799-9325
     Mitchlaw00@comcast.net
     Attorney for plaintiff